UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JIAN HUANG,<br>   Plaintiff,<br><br>   v.<br><br>HARMAN INTERNATIONAL<br>INDUSTRIES, INC.,<br>   Defendant. | :<br>:<br>:<br>:  CIVIL ACTION NO.<br>:  3:14-cv-1263-VLB<br>:<br>:<br>:  July 29, 2015 |

### MEMORANDUM OF DECISION DENYING DEFENDANT HARMAN INTERNATIONAL INDUSTRIES, INC.'S MOTION TO DISMISS

Jian Huang, pro se, sues his former employer, Harman International Industries, Inc.[1] ("Harman"), alleging that it retaliated against him in violation of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1541A.[2] Harman moves to dismiss Huang's complaint for failure to state a claim. For the following reasons, Harman's motion is DENIED.

### FACTS AND PRODUCEDURAL BACKGROUND

Huang brings a SOX-retaliation claim against his former employer, Harmon. ECF, doc. 1 (Compl.). His complaint contains the following allegations. While working for Harman, Huang "reported several potential accounting frauds to the company board as well [as the] SEC." *Id.* at 3. Huang also "reported several potential accounting frauds to the Company's Chairman/CEO or/and the chairman

---

[1] Plaintiff omits "Inc." from Defendant's name. The Clerk of Court is directed to amend the caption accordingly.

[2] Huang also checks the Title VII box on his form complaint for employment discrimination, but he does not identify the facts necessary for stating a Title VII claim, e.g., he does not make a selection in the section requiring him to select his protected class membership. ECF, doc. 1 (Compl.). Accordingly, the Court construes Huang not to be raising a Title VII claim. If the Court is mistaken, Huang should file an amended complaint within 30 days of entry of this order.

1

of [the] Audit Committee." *Id.* at 4.  On October 17, 2012, after receiving an "unfair performance rating," Huang filed a SOX-retaliation complaint with the Occupational Safety and Health Administration ("OSHA").  *Id.* at 3.  Huang was fired on February 8, 2013. *Id.*  Huang seeks, *inter alia*, monetary and injunctive relief.  *Id.* at 5.  Huang also attached his August 2014 right-to-sue letter from OSHA.  *Id.* at 7.

Harman moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Huang's complaint fails to state a SOX-retaliation claim because "[Huang] does not allege facts sufficient to establish that he engaged in statutorily protected activity."  ECF, doc. 20 (Mem.) at 9.  Specifically, Harmon argues that Huang's unspecified allegations of "accounting frauds and significant control deficiencies" are too vague to determine whether Huang reasonably believed that "the conduct in question amounted to mail fraud, bank fraud, or securities fraud or otherwise violated any statute, rule[,] or regulation relating to fraud against shareholders."  *Id.* at 10–11.  Harmon further argues that Huang's OSHA complaint was not a protected activity because the OSHA complaint (as alleged in his instant federal complaint) did not identify conduct that Huang reasonably believed to be a protected activity.  *Id.* at 15–16.

Huang opposes, arguing, in relevant part, that he had a reasonable belief that Harmon was engaging in shareholder fraud.  ECF, doc. 21 (Opp'n).  In support, Huang attaches his OSHA complaint in which he explains that he was a certified public accountant, worked as a full-time auditor for Harmon, and was mostly responsible for conducting SOX audits.  ECF, doc. 21-5 (OSHA Compl.) at

2

1; *see also* ECF, doc. 21-1 (Email Attached to OSHA Compl.). Huang's OSHA complaint further states that, while working for Harmon, he uncovered accounting errors, which led to the overstatement of profits in publically disclosed financial reports by approximately $20 million. *Id.* Huang's OSHA complaint alleges numerous specific instances of those errors, including: (1) during Q1 of 2012, Harmon's Amplifier Business Unit overstated its operating profits both by using an illogical calculation and misstating inventory reserves even by its improper method of calculation, *id.* at 2; *see also* ECF, doc. 21-1 (Email Attached to OSHA Compl.); and (2) in Harmon's Form 10-Q filing for Q2 of 2012, the report overstated net sales and gross margin by 5–7% in violation of generally accepted accounting principles ("GAAP"), *id.* at 3; *see also* ECF, doc. 21-3 (Email Attached to OSHA Compl.). With respect to the first noted error, Huang's immediate supervisor supported him in following up with the business department about that error, but that supervisor was fired shortly thereafter. *Id.* at 3. Huang also discovered that the error persisted in Q3 of 2012, and Huang reported that issue to the Chairman of the Audit Committee. *Id.*

Harman replies that the Court cannot consider at the motion to dismiss stage any of the documents attached to Huang's opposition because those documents are not integral to the complaint or subject to judicial notice. ECF, doc. 27 at 3–4. Harman further argues that, even if those documents can be considered, they still fail to show that Huang had a reasonable belief of securities fraud because those documents identify only to "innocuous or trivial" accounting irregularities. *Id.* at 5–9.

## **LEGAL ANALYSIS**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." [3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court affords a pro se litigant "special solicitude" by interpreting a pro se complaint "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and alterations omitted). Additionally, "[a] pro se complaint should not be dismissed without the [c]ourt's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks and alterations omitted).

---

[3] Harman argues, in a footnote, that Huang must meet the special pleading standards governing fraud. ECF, doc. 20 (Mem) at 15 n.1. However, Federal Rule of Civil Procedure 9(b) does not apply because Huang brings a retaliation claim based on his reasonable belief of fraud rather than a claim necessitating proof of fraud. *See Mendiondo v. Centiela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) (holding that the heightened pleading standard of Rule 9(b) does not apply to FCA retaliation claims because "[t]he fact that the claim arises from an investigation of potential fraud does not alter its nature as a retaliation claim"); *U.S. ex rel. Mooney v. Americare, Inc.*, 2013 WL 1346022 at *8 (E.D.N.Y. Apr. 3, 2013) ("Rule 9(b)'s heightened pleading standard does not apply to plaintiff's FCA retaliation claim since no showing of fraud is required.")

As an initial matter, the parties dispute what documents may now be considered in determining whether the complaint states a claim.  Specifically, Harmon argues that this Court cannot consider any of the documents that Huang attached to his opposition because none of them are integral to the complaint or materials subject to judicial notice.  Harmon is incorrect.  In addition to documents integral to the complaint and materials subject to judicial notice, this Court may consider, *inter alia*, documents incorporated in the complaint by reference.  *See Roth v. Jennings*, 489 F.3d, 499, 509 (2d Cir. 2007).  A document is incorporated by reference if "it makes a clear, definite, and substantial reference to the documents.'" *DeLuca v. AccessIT Group, Inc.*, 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010) (quotation marks omitted).  Here, Huang incorporates his OSHA complaint, including the documents attached to his OSHA complaint, by reference.[4]  *See, e.g., D'Amato v. Conn. Bd. of Pardons and Paroles*, 2013 WL 617047 at *1 (D. Conn. 2013) ("In considering Defendants' first request, the Court may consider the EEOC charge, because it was incorporated by reference in paragraph eighteen of the Complaint."); *Muhammed v. New York City Transit Auth.*, 450 F.Supp.2d 198, 204 (E.D.N.Y. 2006) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference.").

Turning to the merits, SOX prohibits a publicly traded company from retaliating against an employee who:

---

[4] The Court does not consider exhibits 4, 6, 6-1, 6-2, and 7 because those documents were not attached to Huang's OSHA complaint.

5

>  **provides information, causes information to be provided, or otherwise assists in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.**

*Nielson v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quotation marks and alterations omitted).  To state a plausible SOX retaliation claim, a plaintiff must allege facts indicating that: "(1) he or she engaged in a protected activity; (2) the employer knew that he or she engaged in the protected activity; (3) he or she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 451 (2d Cir. 2013).

Harmon disputes only whether Huang's complaint satisfies the first element, i.e., whether Huang alleged facts demonstrating that he engaged in a protected activity.  A plaintiff engages in a protected activity when he reasonably believes that the reported conduct violates an offense set forth in SOX.  *Nielsen*, 762 F.3d at 221 (rejecting the "definitively and specifically" requirement).  That test has both objective and subjective elements: "a plaintiff must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation." *Id.* (internal quotation marks omitted).  The objective prong looks at "the basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience."  *Id.* (internal quotation marks omitted).  A plaintiff's subjective belief, which Harmon does not

6

dispute, turns on whether the plaintiff actually believes the reported conduct violated the relevant laws.  *See Leshinsky v. Telvent, GIT, S.A.*, 942 F.Supp.2d 432, 444 (S.D.N.Y. 2013).

Here, Huang's OSHA complaint, which is incorporated by reference, states sufficient facts concerning his objectively reasonable belief that he was alerting company executives to shareholder fraud.  First, Huang is a certified public accountant, was hired by Harmon to work as a full-time auditor, and, as an auditor, mostly conducted SOX audits.  *Compare Wood v. Dow Chem. Co.*, 2014 WL 7157100 at *7 (E.D. Mich. 2014) (complaint stated objectively reasonable belief of fraud, in part, because plaintiff "had a great deal of experience in accounting and fraud detection"), *with Andaya v. Atlas Air, Inc.*, 2012 WL 1871511 at *5 (S.D.N.Y. 2012) ("There is no indication in the record that plaintiff's training, education, or experience would give him sufficient knowledge or expertise to conclude the conduct of which he complained violated 1514A.").  Thus, Huang's training and experience are facts suggesting that Huang reasonably believed that he was engaging SOX-protected activity.  The reasonableness of Huang's conclusion is supported by the fact that his supervisor encouraged him to proceed further.  Harmon, who hired Huang and his supervisor to perform SOX audits, cannot now argue that both of these professionals reached unreasonable conclusions because they did not understand the meaning of fraud.

Moreover, Huang details specific instances when he reported accounting inaccuracies.  Those accounting inaccuracies cannot be deemed "innocuous or trivial" for several reasons: there were numerous errors occurring in different

departments and at different times; those errors resulted from eschewing GAAP rather than human error; those errors amounted to tens of millions of dollars; and those errors were reported to shareholders in Harmon's Form 10-Q and 10-K filings.[5]  *See Wood*, 2014 WL 7157100 at *7 (plaintiff stated viable SOX-retaliation claim based on numerous instances of unreported financial activity amounting to millions of dollars).  Finally, Huang alleges facts that, if true, would indicate a mental state more than mere negligence.  He alleges that his immediate supervisor was fired shortly after that supervisor encouraged Huang to follow up on an accounting inaccuracy, that senior management failed to address Huang's reports, and that those errors persisted in subsequent quarterly reports.  Accordingly, these facts are sufficient to state the first element of a SOX-retaliation claim.

---

[5]  Harmon recently submitted a notice of additional authority in further support of its motion to dismiss, but that case, *Nazif v. Comput. Sci. Corp.*, 2015 WL 3776892 (N.D. Cal. June 17, 2015), is inapposite.  The *Nazif* court granted summary judgment in the defendant's favor, in part, because "no objectively reasonable accountant could have believed that a revenue misstatement of 'approximately $15 million' was sufficiently material to corporation [sic] as large as [the defendant corporation] to warrant a colorable suspicion of securities fraud."  *Id.* at *7.  The summary judgment evidence showed that the defendant corporation in *Nazif* reported annual revenue of over 14 billion dollars.  *Id.* at *6.  In other words, the misstatements in *Nazif* amounted to approximately one tenth of one percent of the defendant's annual revenue.  Here, in contrast, Huang alleges, *inter alia*, that Harmon's 2012 Form 10-Q filing for Q2 overstated net sales (the number Harmon uses to calculate its revenue) by 5–7%, an error *fifty to seventy times* as large as the collective misstatements in *Nazif*.  Moreover, Harmon does not explain how its 2014 Form 10-K SEC filing has any bearing on the materiality of the alleged misstatements in its 2012 Form 10-Q and 10-K filings.  Notably, in its 2012 10-K filing, Harmon reported approximately 20% less in net sales than in its 2014 10-K filing.  *See* http://www.sec.gov/Archives/edgar.  In effect, Harmon attempts to have the case dismissed by comparing apples and oranges, and the Court does not accept such comparisons as relevant.

## **CONCLUSION**

For the foregoing reasons, Harmon's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: July 29, 2015**