UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JIAN HUANG, | : | Civil Action |
| Plaintiff, | : | No. 3:14-CV-01263-VLB |
| V. | : | |
| HARMAN INTERNATIONAL INDUSTRIES, INC., | : | |
| Defendant. | : | October 20, 2015 |

## AMENDED COMPLAINT

Plaintiff Jian Huang, pursuant to Fed.R.Civ.P. 15(a)(2), and for his Amended Complaint against Defendant Harman International Industries, Inc. ("Harman"), states as follows:

## NATURE OF THE ACTION

1. This action arises out of the unlawful termination of Plaintiff's employment as an internal auditor for a public company. Harman terminated Plaintiff's employment in retaliation for his attempts to correct repeated violations of accounting, financial reporting, and/or legal compliance requirements and regulations. Plaintiff made these disclosures to prevent Harman from providing false information to its shareholders, consistent with his obligations as a certified public accountant and pursuant to Harman's stated Code of Conduct. Rather than taking appropriate steps to remedy the violations Plaintiff disclosed, Harman retaliated against Plaintiff. These retaliatory actions began after Plaintiff disclosed the foregoing violations to his superiors, and continued through the remainder of his employment, which Harman terminated for bogus and pretextual reasons. Plaintiff seeks relief under the whistleblower anti-retaliation provisions of the Sarbanes-Oxley Act of 2002

("SOX"), 18 U.S.C. § 1514A, and the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank"), 15 U.S.C. § 78u–6, as well as state law statutory and common law claims..

## PARTIES

2.  Plaintiff Jian Huang is a citizen of the State of Connecticut and resides at 39 Crocus Lane, Avon, Connecticut.

3.  Defendant Harman International Industries, Inc. is a corporation organized and existing under the laws of the State of Delaware and maintains a principal place of business at 400 Atlantic Street, Stamford, Connecticut.

## JURISDICTION AND VENUE

4.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 as Plaintiff seeks relief under federal statutes. As to those claims not arising under federal law but clearly so related to the claims in this action within the original jurisdiction of this Court, jurisdiction exists under the doctrine of supplemental jurisdiction puissant to 28 U.S.C. §1367.

5.  This Court has personal jurisdiction over Harman, and venue is proper in this District under 28 U.S.C. § 1391(b), because Harman is a resident of this District, and the wrongful acts complained of occurred in this District.

## FACTUAL BACKGROUND

6.  Plaintiff is a certified internal auditor (CIA) in the United States and a certified public accountant (CPA) in China and holds a master's degree in business administration.

7.  On or about April 4, 2011, Plaintiff began employment with Harman in the position of Operational Auditor.

8. In his capacity as an Operational Auditor for Harman, Plaintiff worked as a full-time auditor, with primary responsibility for conducting SOX-mandated audits for Harman's United States-based business units.

9. In his capacity as an Operational Auditor for Harman, Plaintiff was required to report all substantive concerns regarding internal control deficiencies in accordance with Securities and Exchange Commission ("SEC") requirements for publicly-traded companies.

10. Pursuant to Harman's Code of Business Conduct for Employees (the "Code of Conduct"), in effect during the course of Plaintiff's employment, Harman and its employees were required to obey all applicable laws, rules, and regulations of the States and countries in which Harman conducted business.

11. The Code of Conduct included the following provisions:

**Accounting and Record-Keeping**

**We require honest and accurate recording and reporting of information in order to make responsible business decisions and accurately calculate our financial results.  We must document and record our Company's business affairs accurately.**  Unrecorded or "off the books" funds or other assets, charges or obligations are strictly prohibited, as are special billing or payment procedures that suggest evasion of tax or other requirements by the other party to them.

**Public Reporting**

Harman International is a public company and as a result files reports and other documents with the Securities and Exchange Commission (SEC). We maintain disclosure procedures designed to ensure that the information included in the reports or other documents that we file or submit to the SEC is collected and communicated to senior management in order to permit timely disclosure of required information. **Our objective is to always make accurate and understandable disclosure in reports and documents we file with the SEC and in our other public communications**.

As a result, when called upon, all of us must cooperate and fairly communicate with our internal and outside auditors.  Moreover, while it is, of course, fine to argue the merits of your point of view, it is illegal to take any action to fraudulently influence, coerce, manipulate or mislead any internal or external auditor engaged in the performance of an audit.

The laws and regulations applicable to filings made with the SEC, **including those applicable to accounting matters, are complicated.  If you have questions or are uncertain as to how our disclosure controls and procedures may apply in a specific circumstance, promptly contact your supervisor or a more senior manager**.

**Reporting any Illegal or Unethical Behavior; Enforcement**

Each of us must work to ensure prompt and consistent action against unethical or illegal behavior. A violation of our Company rules, including any provision of this Code of Conduct, may be easy to recognize and should be promptly reported to a supervisor or, if appropriate, a senior manager. …

1. What do I need to know? **In order to reach the right solutions, we must be as fully informed as possible**.
2. What specifically am I being asked to do? Does it feel unethical or improper? This will focus the Inquiry on the specific action in question, and the available alternatives. Use judgment and common sense; if something feels unethical or improper, it probably is.
3. What is my responsibility? In most situations, there is shared responsibility. Should colleagues be informed? It may help to get others involved and discuss the issue. However, you should do this with care so you don't expose yourself to criticism or even litigation if your suspicions prove to have been unfounded.
4. **Have I discussed the issue with a supervisor? This is the basic guidance for all situations. In many cases, a supervisor will be more knowledgeable about the question, may know the right senior manager to talk to and will appreciate being brought into the decision-making process. Remember that it is the supervisor's responsibility to help solve problems**.
5. Should I seek help from management? In the rare case where it may not be appropriate to discuss an issue with a supervisor, or if approaching a supervisor with your question makes you uncomfortable, you should feel completely free to discuss it locally with the human resources manager in your office or if you prefer a more senior manager.

**The Company does not allow retaliation of any type for good faith reports of misconduct by others.** Any employee that is found to have engaged in retaliatory activities will be subject to disciplinary action, up to and including termination of his or her employment with the Company. A knowing violation of this anti-retaliation policy could also constitute a federal crime punishable with a fine, imprisonment or both.  (emphasis added)

12. While performing his responsibilities as an Operational Auditor for Harman, Plaintiff uncovered accounting and financial reporting errors and internal control deficiencies, which Plaintiff reasonably believed led to the overstatement of profits in publicly-disclosed financial reports by approximately $20 million.

13. In or about October of 2011, Plaintiff conducted an audit of Harman's Amplifier Business Unit ("ABU"), located in Elkhart, Indiana.  During that audit, Plaintiff discovered improper recording of inventory reserves by ABU, which Plaintiff reasonably believed resulted in overstated profits of approximately $500,000.00, or 70% of operating profits (the "ABU Inventory Reserve Issue").   Plaintiff reasonably concluded that ABU overstated its operating profits both by using an illogical calculation and by misstating inventory reserves.

14. As required under the Code of Conduct, Plaintiff directed his concerns regarding the ABU Inventory Reserve Issue to his immediate supervisor, Annadurai (Amir) Amirthalingam, Harman's Director of Internal Audit.  Mr. Amirthalingam agreed that Plaintiff's concerns were legitimate and should be raised with Mr. Amirthalingam's superior, Chet Simon, Harman's Vice President, Internal Audit.

15. On December 22, 2011, Plaintiff advised Mr. Simon of his concerns regarding the ABU Inventory Reserve Issue.  Mr. Simon told Plaintiff to drop the matter and not to make any changes to his report on the ABU audit.

16.     On or about December 22, 2011, Mr. Amirthalingam also addressed the ABU Inventory Reserve Issue with Mr. Simon, who told him not to press the matter any further.

17.     By e-mail correspondence dated January 5, 2012, Plaintiff reported the ABU Inventory Reserve Issue to Harman's Chief Executive Officer, Dinesh Paliwal.  In that communication, Plaintiff advised Mr. Pailwal that Mr. Amirthalingam supported his conclusion with respect to the ABU Inventory Reserve Issue and expressed concern about Mr. Simon's failure to take corrective action.

18.     On or about February 9, 2012, Harman terminated Mr. AmirthaIngam's employment.  On information and belief, this termination was in retaliation for Mr. Amirthalingam's reporting of SOX violations and his support of Plaintiff's actions to correct deficiencies in the company's accounting and financial reporting.

19.     As a result of Mr. Amirthalingam's termination, Plaintiff was required to report directly to Chet Simon, the Harman employee whose actions formed the basis of Plaintiff's prior internal complaint concerning the ABU Inventory Reserve Issue.

20.     In or about March of 2012, Plaintiff conducted an audit of Harman's Infotainment Division and Branded Audio Business Unit ("IBU"), located in Farmington Hills, Michigan.

21.     By e-mail correspondence dated March 28, 2012, Plaintiff advised Mr. Simon of accounting and financial reporting irregularities at IBU, which Plaintiff reasonably believed had overstated its sales by approximately $11 million (the "IBU Overstatement Issue").

22. By e-mail correspondence dated April 2, 2012, an unidentified individual reported to Kenneth Reiss, Chairman of Harman's Audit Committee, concerns about the deficiencies in, and potential liability resulting from, Harman's accounting and financial reporting practices generally, and the ABU Inventory Reserve Issue specifically. The e-mail's author also expressed fear of retaliation by Mr. Simon and against Plaintiff based on Plaintiff's attempts to have these issues addressed and corrected.

23. On or about April 23, 2012, Plaintiff conducted an audit of Harman's Loudspeaker Division Business Unit ("LBU"), located in Northridge, California.

24. By e-mail correspondence dated April 26, 2012, Plaintiff reported to Daren Dickerson, LBU's Finance Director, and to Mr. Simon his concerns about control deficiencies regarding Neo cost accounting practices during his audit of LBU. Plaintiff specifically mentioned price variances that Plaintiff reasonably believed could create a $3.9 million overstatement on financial statements (the "LBU Overstatement Issue").

25. By e-mail correspondence dated May 3, 2012, Plaintiff advised Mr. Reiss that the ABU Inventory Reserve Issue was unresolved and asked for his support in taking corrective action.

26. By e-mail correspondence dated July 19, 2012, Plaintiff again reported to Mr. Reiss and to Harman's General Counsel (Todd Suko) the concerns he had raised regarding the IBU Overstatement Issue and his continued fear of retaliation by Mr. Simon due to Plaintiff's efforts to obtain corrective action.

27. By separate e-mail correspondence dated July 19, 2012, Plaintiff provided Mr. Reiss and Mr. Suko with detailed summaries of the accounting errors and omissions noted in three specific audit areas (ABU, IBU, and LBU) and sought corrective action by Harman's Audit Committee.

28. On or about July 19, 2012, in retaliation for the complaints Plaintiff raised about Harman's accounting and financial reporting practices, Mr. Simon gave Plaintiff a substandard performance review, placed Plaintiff on a "performance improvement plan," and denied Plaintiff an increase in compensation.

29. In or about September of 2012, Plaintiff began reporting to Gergely Karli, who had assumed the position of Senior Position, Internal Audit.

30. On or about October 15, 2012, Plaintiff submitted a complaint to the Occupational Safety and Health Administration ("OSHA").  In that complaint, Plaintiff alleged that Harman retaliated against him because of the SOX-related accounting, financial reporting, and internal controls concerns he directed to Harman's management, including his concerns about the ABU Inventory Reserve Issue, the IBU Overstatement Issue, and the LBU Overstatement Issue.

31. In or about November of 2012, Plaintiff raised concerns with his supervisor, Mr. Karli, about several pricing accounting errors and understatement of inventory reserves in IBU, which Plaintiff reasonably believed would cause inaccuracies in IBU's financial statements.

32. As neither Mr. Simon (Plaintiff's former supervisor) nor Mr. Karli (Plaintiff's then-supervisor) nor Mr. Reiss (of Harman's Audit Committee) had taken any action in response to the concerns he raised, in or about November of 2012, Plaintiff reported to the SEC his concerns regarding accounting, financial reporting, and internal controls issues at Harman.

33. In or about January of 2013, Mr. Simon and/or others under his direction and control, including Plaintiff's then-supervisor (Gergely Karli), ordered Plaintiff to conduct an audit of LBU at its offices in Northridge, California. Mr. Simon and/or Mr. Karli gave Plaintiff this assignment with full knowledge that Plaintiff could not possibly complete it with limited manpower resources and within the time allotted. When Plaintiff made arrangements to remain on-site to complete the audit, he was accused of insubordination.

34. Following his disclosure of SOX violations, Harman subjected Plaintiff to retaliatory actions, including giving him work assignments under terms and conditions that could not possibly be satisfied; preparing false performance reviews; reducing his compensation; and making false accusations of insubordinate conduct.

35. On February 7, 2013, Harman terminated Plaintiff's employment because he engaged in protected conduct under SOX, and specifically, because he identified and sought to remedy accounting and financial reporting errors and internal control deficiencies.

## **CLAIMS FOR RELIEF**

**Count One – Violation of SOX Anti-Retaliation Provisions**

1-35.   Plaintiff repeats and realleges the allegations of Paragraphs 1 through 35, above, as if fully set forth herein.

36.   Plaintiff engaged in a protected activity under SOX in that he reasonably believed that the reported conduct constituted a SOX violation, including, but not limited to, permitting false accounting and financial reporting information to be disclosed to Harman's investors despite the fact that it was not in compliance with generally accepted accounting principles (GAAP) and thus could defraud those investors, in violation of United States securities laws.

37.   Given the circumstances and issues raised by the violations Plaintiff uncovered, and further given Plaintiff's training and experience, a reasonable person in Plaintiff's position would have believed that the above-referenced conduct constituted a violation.

38.   During the course of his employment with Harman, Plaintiff at all times acted in good faith and in accordance with his obligations as a CIA and a CPA and a Harman employee responsible for internal auditing functions.

39.   After discovering the accounting and financial reporting errors described above, Plaintiff availed himself of internal reporting procedures to seek appropriate corrective action.

40. Plaintiff provided information, caused information to be provided, or otherwise assisted in an investigation regarding conduct which he reasonably believed constitutes a violation of a law, rule, or regulation covered by 18 U.S.C. § 1514A(a)(1), and he provided said information or assistance to a federal regulatory agency, as well as persons employed by Defendant with supervisory authority over Plaintiff and persons employed by Defendant who had the authority to investigate, discover, or terminate misconduct.

41. In addition, Plaintiff filed, caused to be filed, testified, participated in, or otherwise assisted in a proceeding relating to an alleged violation of a law, rule or regulation covered by 18 U.S.C. § 1514A(a)(2).

42. Harman had knowledge of Plaintiff's protected conduct, and Harman discharged, suspended, threatened, harassed, and discriminated against Plaintiff in the terms and conditions of his employment because he engaged in that protected conduct.

43. As a result of engaging in protected activity under SOX, Plaintiff suffered unfavorable personnel action in that he was subjected to retaliatory behavior and ultimate termination of his employment by Harman.

44. Harman retaliated against Plaintiff in violation of SOX in that Plaintiff's protected activity was a contributing factor in the unfavorable personnel action to which Harman subjected him.

45. SOX prohibits a publicly traded company from retaliating against a "whistleblower"; that is, an employee who provides information concerning securities law violations to, among other, a federal regulatory or law enforcement agency, a member of Congress, or "a person with supervisory authority over the employee." 18 U.S.C. § 1514A(a)(1).

46. Plaintiff is a whistleblower within the meaning of SOX.

47. As a result of Harman's retaliatory actions in violation of SOX, Plaintiff has sustained damages, including, but not limited to, compensatory damages, economic damages, loss of employment benefits, damage to reputation, emotional and physical distress, as well as loss of enjoyment of life.

**Count Two – Violation of Dodd-Frank Anti-Retaliation Provisions**

1-46. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 46 of Count One, above, as and for the allegations of Paragraphs 1 through 46 of Count Two as if fully set forth herein.

47. Dodd-Frank defines a "whistleblower" to mean "any individual who provides ... information relating to a violation of the securities laws to the [SEC]." 15 U.S.C. § 78u–6(a)(6).

48. Dodd-Frank prohibits an employer from retaliating against a "whistleblower" who (a) provides information to the SEC concerning securities laws violations, or (b) makes disclosures required by or protected under SOX. 15 U.S.C. § 78u–6(h)(1)(A).

49. Plaintiff is a whistleblower within the meaning of Dodd-Frank.

50. Harman retaliated against Plaintiff because he provided information to the SEC concerning suspected securities laws violations, and/or because he made disclosures required by or protected under SOX.

51. As a result of Harman's retaliatory actions in violation of Dodd-Frank, Plaintiff has sustained damages.

**Count Three – Violation of Connecticut General Statutes § 31-51q**

1-51.   Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 of Count Two, above, as and for the allegations of Paragraphs 1 through 51 of Count Three as if fully set forth herein.

52.   Harman subjected Plaintiff to discipline because of Plaintiff's exercise of rights guaranteed by Article One, § 4 of the Constitution of Connecticut.  Plaintiff engaged in speech touching upon matters of public concern, including, but not limited to, (1) internal complaints regarding failure to comply with fiduciary duties to investors, failure to disclose material information to investors, and inadequate internal controls; (2) commencing a proceeding with OSHA detailing his concerns regarding failure to comply with fiduciary duties, failure to disclose material information, and inadequate internal controls; (3) providing additional information to OSHA following the filing of his complaint; and (4) opposing Harman's failure to respond to complaints concerning deficient accounting, financial reporting, and internal control practices and procedures.

53.   In repeatedly raising concerns about Harman's regulatory and business practices, and in attempting to convince Harman's executive team to engage in lawful and ethical regulatory and business practices, Plaintiff at all times was exercising rights protected by Article One, § 4 of the Connecticut Constitution by speaking on matters of public concern.

54.   Harman had knowledge of Plaintiff's protected conduct.

55.   Plaintiff's exercise of rights protected by Article One, § 4 of the Connecticut Constitution did not substantially or materially interfere with his bona fide job performance or his working relationship with Harman.

56.     Harman retaliated against Plaintiff and terminated Plaintiff's employment because of his exercise of free speech rights protected by Article One, § 4 of the Connecticut Constitution, in violation of General Statutes § 31-51q.

57.     Harman's violation of General Statutes § 31-51q has caused Plaintiff to suffer damages, including, but not limited to, compensatory damages, economic damages, loss of employment benefits, damage to reputation, emotional and physical distress, as well as loss of enjoyment of life.

58.     Harman exhibited a reckless indifference to Plaintiff's rights, or an intentional and wanton violation of Plaintiff's rights, thereby entitling Plaintiff to an award of punitive damages.

**Count Four - Wrongful Discharge in Violation of Public Policy**

1-51.   Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 of Count Two, above, as and for the allegations of Paragraphs 1 through 51 of Count Four as if fully set forth herein.

52.     Harman terminated Plaintiff's employment because he (a) repeatedly raised concerns about Harman's unlawful and unethical regulatory and business practices in an effort to compel Harman to address those issues, (b) sought to protect Harman's investors and the general public from the effect of unscrupulous business practices, and (c) insisted that Harman engage in lawful and ethical regulatory and business practices.

53.     By refusing to respond to Plaintiff's repeated concerns, Harman management forced Plaintiff to engage in what he considered to be unlawful and unethical regulatory and business practices as a condition of his continued employment.

54. Harman's termination of Plaintiff's employment violated several important public policies of the State of Connecticut, including, but not limited to, the prohibition against engaging in unlawful and unethical regulatory and business practices, and the need for public corporations to comply with standards for ethics, honesty, and integrity in their interactions with, and communications and disclosures to, investors and the general public.

55. Plaintiff's termination was wrongful in that it violated both the implied covenant of good faith and fair dealing inherent in every employer-employee relationship and the public policies set forth in Paragraph 54, above.

56. As a result of Harman's wrongful termination of his employment, Plaintiff has suffered damages, including, but not limited to, compensatory damages, economic damages, loss of employment benefits, damage to reputation, emotional and physical distress, as well as loss of enjoyment of life.

57. Harman exhibited a reckless indifference to Plaintiff's rights, or an intentional and wanton violation of Plaintiff's rights, thereby entitling Plaintiff to an award of punitive damages.

**Count Five - Breach of Express Contract**

1-51. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 of Count Two, above, as and for the allegations of Paragraphs 1 through 51 of Count Five as if fully set forth herein.

52. Harman's Code of Conduct prohibited Harman from taking adverse personnel action against Plaintiff as a result of his efforts to protect Harman against unlawful conduct and accounting irregularities and fraud.

53. The Code of Conduct obligated Plaintiff to report unlawful conduct to his supervisors, and Plaintiff met his obligations under the Code of Conduct by doing so.

54. The Code of Conduct expressly prohibited Harman from taking retaliatory actions against Plaintiff, and created an express contract that benefitted and protected Plaintiff from retaliatory conduct.

55. Harman violated the Code of Conduct by retaliating against Plaintiff in order to protect its own business interests and profit, and in doing so violated the Code of Conduct and violated Plaintiff's explicit rights under the Code of Conduct.

56. Harman breached the Code of Conduct by terminating Plaintiff's employment in retaliation for exposing and seeking correction of unlawful conduct.

57. Plaintiff has been harmed by Harman's conduct and he has suffered losses and damages.

**Count Six - Breach of Implied Contract**

1-51. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 of Count Two, above, as and for the allegations of Paragraphs 1 through 51 of Count Six as if fully set forth herein.

52. Harman's Code of Conduct prohibited Harman, and its agents, from taking adverse personnel actions against Plaintiff as a result of his efforts to protect Harman against unlawful conduct and accounting irregularities and fraud.

53. The Code of Conduct obligated Plaintiff to report unlawful conduct to his supervisors, and Plaintiff met his obligations under the Code of Conduct.

54. The Code of Conduct expressly prohibited retaliatory conduct, and created an implied contract that benefitted and protected Plaintiff from retaliatory conduct and assured that he would not be terminated by reason of his reporting unlawful conduct and accounting irregularities.

55. Harman and its agents violated the code by retaliating against Plaintiff, in order to protect its personal interests, and in doing so violated the policies and violated Plaintiff's implied rights under the policies.

56. Harman breached such implied contract by terminating Plaintiff's employment in retaliation of exposing such unlawful conduct.

57. Plaintiff has been harmed by Harman's conduct and he has suffered losses and damages.

**Count Seven - Promissory Estoppel**

1-51. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 of Count Two, above, as and for the allegations of Paragraphs 1 through 51 of Count Seven as if fully set forth herein.

52. Harman made the statements and representations in the Code of Conduct to Plaintiff for the purpose of inducing Plaintiff to rely on them; to believe that certain facts existed; and to act upon those facts.

53. Plaintiff changed his position to his detriment in reasonable reliance on the truthfulness of the statements and representations made by Harman in the Code of Conduct.

17

54. As a result of the promises set forth above and Plaintiff's reliance on those promises, Harman is estopped from contesting, and is bound by, those representations.

55. As a result of his reasonable reliance on the truthfulness of the statements and representations made by Harman, Plaintiff has sustained damages.

**Count Eight - Negligent Misrepresentation**

1-51. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 of Count Two, above, as and for the allegations of Paragraphs 1 through 51 of Count Eight as if fully set forth herein.

52. Harman made false representations and promises to Plaintiff in the Code of Conduct.

53. Harman failed to exercise reasonable care or competence in communicating the information provided to Plaintiff in the Code of Conduct.

54. Plaintiff reasonably and justifiably relied on Harman's false representations and promises set forth in the Code of Conduct in making decisions regarding his business and employment activities, and specifically, in reporting to his superiors accounting and financial reporting activities that he reasonably believed would place Harman in danger of sanctions due to SOX violations.

55. As a result of Harman's conduct as set forth above, Plaintiff has sustained damages.

WHEREFORE, Plaintiff Jian Huang prays for the following relief against Defendant Harman International Industries, Inc.:

1. Reinstatement, with the same seniority status that Plaintiff would have had but for Harman's unlawful actions, pursuant to 18 U.S.C. § 1514A(c)(2)(A) and/or 15 U.S.C. § 78u-6(h)(1)(C)(i);

2. Back pay, with accrued interest, pursuant to 18 U.S.C. § 1514A(c)(2)(B);

3. Two times back pay, with accrued interest, pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(ii);

4. Damages for emotional pain and suffering, mental anguish, embarrassment, and humiliation pursuant to 18 U.S.C. § 1514A(c)(2)(C);

5. Damages for reputational injury based on a decrease in the Plaintiff's future earning capacity;

6. Litigation costs, expert witness fees, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1514A(c)(2)(C) and/or 15 U.S.C. § 78u-6(h)(1)(C)(iii);

7. Compensatory damages; and

8. Such other and further relief as the Court deems, fair, just, and equitable.

**Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.**

        PLAINTIFF
        JIAN HUANG

        By:   /s/ Douglas J. Varga
             Douglas J. Varga (ct 18885)

           LUCAS BAGNELL VARGA LLC
           2425 Post Road, Suite 200
           Southport, CT 06890
           Tel:  (203) 227-8400
           Fax:   (203) 227-8402
           E-Mail: dvarga@lbv-law.com

**CERTIFICATION**

I hereby certify that on October 20, 2015, a copy of the foregoing Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

Dated at Southport, Connecticut this 20th day of October, 2015.

      /s/ Douglas J. Varga
      Douglas J. Varga (ct18885)